UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
CLAUDIA GROSSO, a.k.a.
CLAUDIA GERSHENSON, individually,
ADAM D. GERSHENSON, MELISSA L.
GERSHENSON, and SPENCER T.
GERSHENSON, individually and as
beneficiaries,

                Plaintiffs,               <u>MEMORANDUM & ORDER</u>
                                              07-CV-3620 (JS)(WDW)
     -against-

DEBORAH RADICE, in her individual
capacity,

                Defendant.
----------------------------------X
APPEARANCES:
For Plaintiffs:      Judith Ellen Stone, Esq.
                    2819 Harbor Road
                    Merrick, NY 11566

For Defendant:       Barry M. Lasky, Esq.
                    Lasky & Steinberg, PC
                    595 Stewart Avenue, Suite 410
                    Garden City, NY 11530

SEYBERT, District Judge:

        On August 28, 2007, Plaintiffs Claudia Grosso ("Grosso"),

Adam D. Gershenson ("Adam"), Melissa T. Gershenson ("Melissa"), and

Spencer T. Gershenson ("Spencer") ("collectively, "Plaintiffs")

commenced this action against Deborah Radice, in her individual

capacity ("Radice" or "Defendant"), alleging breach of contract and

breach of fiduciary duty.  Pending before the Court is Defendant's

motion for summary judgment, Plaintiffs' motion for partial summary

judgment on the breach of contract claim, Plaintiffs' motion for a

stay, and Plaintiffs' motions for sanctions.  For the reasons

stated below, Defendant's motion for summary judgment is GRANTED in

part and DENIED in part, Plaintiffs' motion for summary judgment is DENIED, Plaintiffs' motion for sanctions is DENIED, and Plaintiffs' motion for a stay is DENIED.

BACKGROUND

I. <u>Facts</u>

The following facts are taken from the Parties' 56.1 Statements and Counter-Statements and the exhibits attached thereto. Although the Parties agree on very little, the following facts are undisputed unless otherwise noted.

Grosso is the ex-wife of Ira Gershenson ("Decedent"), who passed away on April 25, 2003. (Def.'s R. 56.1 Stmt ¶¶ 2, 22). Adam, Melissa, and Spencer are Grosso and the Decedent's children. (<u>Id.</u>) Defendant Radice is Decedent's daughter and Grosso's step-daughter. (<u>Id.</u> ¶ 3.)

Pursuant to the divorce decree between the Decedent and Grosso, the Decedent was required to provide an $80,000.00 insurance policy on behalf of Adam, Melissa, and Spencer (hereinafter, the "Insurance Policy"). (<u>Id.</u> ¶ 16.) At some point, the Decedent allowed the life insurance policy to lapse. (<u>Id.</u> ¶ 18.) In May of 2003, Radice made a payment to Grosso in the amount of $341.84 from Radice's personal checking account. (Pls.' R. 56.1 Stmt ¶ 5). Radice sent Grosso a letter with the check (the "May 2003 letter"), which stated,

> This check is an advance on the $80,000 to
> which we have agreed you are entitled to

receive from my father's estate. The
$80,000.00 is in lieu of the life insurance
policy that my father was ordered to maintain,
for the benefit of Adam, Melissa, and Spencer,
in your divorce decree and which he had
allowed to lapse. The $341.84 will be
deducted [from] the $80,000 once the estate is
settled. Deposit of this check constitutes
your agreement to the terms set forth above.
(Id. ¶ 6.)

Radice was the named Executrix in the Decedent's Last

Will and Testament (hereinafter, the "Will"). (Def.'s R. 56.1 Stmt

¶ 4.) The Decedent's Will required Radice, as the Executrix, to

pay Adam, Melissa, and Spencer the proceeds of an Individual

Retirement Account held at Maspeth Federal Savings Bank (the

"Retirement Account"). (Id. ¶ 15.) However, the Retirement

Account no longer existed at the time of the Decedent's death.

(Id.)

II. State Court Action

In July of 2004, Plaintiffs filed an action against

Defendant in the Supreme Court for the State of New York, County of

Nassau (the "State Court Action").[1] In the State Court Action,

Plaintiffs sued Defendant in her capacity as Executrix of the

Decedent's estate, Custodian of the Uniform Gift to Minors Account

("UGMA") for the benefit of Spencer, "Attorney-in-Fact" for the

Decedent, and as Custodian/Trustee of other accounts for Adam and

---

[1] The Court notes that the complaint and other documents filed in
the State Court Action are pubic documents subject to judicial
notice. See Narumanchi v. Foster, No. 02-CV-6553, 2006 U.S.
Dist. LEXIS 73369, at *7 (E.D.N.Y. Sept. 29, 2006).

3

Melissa, and in her individual capacity. The Honorable F. Dana Winslow dismissed Plaintiffs' actions against Defendant in her capacity as Executrix on the grounds that Defendant was never appointed as Executrix because there was nothing left in the Decedent's estate to probate, and thus Defendant could not be sued in her capacity as Executrix. Justice Winslow dismissed the claims against Defendant in her personal capacity, in her capacities as Custodian/Trustee for other accounts on behalf of Adam and Melissa, and as attorney-in-fact for the Decedent for lack of personal jurisdiction. Finally, Justice Winslow dismissed Plaintiff's claims against Defendant in her capacity as Custodian of the UGMA account for the benefit of Spencer for failure to state a claim. Plaintiffs' state court complaint alleged that Defendant breached a fiduciary duty to Spencer by allegedly failing to roll-over funds in one or more of the Decedent's accounts into Spencer's UGMA account. Justice Winslow held that Plaintiffs

> failed to allege the standard of care against which the conduct of the defendant is to be measured, the defendant's failure to conform to the applicable standard of care in the management of the UGMA assets and a proximate causal relation between the defendant's deviation from the applicable standard of care and the loss suffered by the plaintiff.

Grosso v. Estate of Ira Gershenson, et al., Index No. 009437/04, at 13 (N.Y. Sup. Ct. Jan. 17, 2005).

The Appellate Division of the State of New York, Second Department, affirmed. See Grosso v. Estate of Gershenson, 822

N.Y.S.2d 150 (N.Y. App. Div. 2d Dep't 2006).

<u>DISCUSSION</u>

I.    <u>Standard of Review on Summary Judgment</u>

"Summary judgment is appropriate where there is no genuine dispute concerning any material facts, and where the moving party is entitled to judgment as a matter of law." <u>Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.)</u>, 153 F.3d 61, 67 (2d Cir. 1998) (citing Fed. R. Civ. P. 56(c)); <u>see</u> <u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." <u>McLee v. Chrysler Corp.</u>, 109 F.3d 130, 134 (2d Cir. 1997); <u>see</u> <u>also</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." <u>McLee</u>, 109 F.3d at 134.

"Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth

specific facts showing that there is a genuine issue for trial.'"

Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)

(quoting Anderson, 477 U.S. at 256). "Mere conclusory allegations

or denials will not suffice." William v. Smith, 781 F.2d 319, 323

(2d Cir. 1986). Indeed, when a motion for summary judgment is

made, it is time to "to put up or shut up. . . . [U]nsupported

allegations do not create a material issue of fact." Weinstock,

224 F.3d at 41 (internal citations omitted).

II. Defendant's Motion for Summary Judgment

Defendant argues that she is entitled to summary judgment

because Plaintiffs' Complaint is barred by res judicata, collateral

estoppel, the Rooker-Feldman doctrine, accord and satisfaction, the

statute of limitations, the probate exception, and the domestic

relations exception. Defendant additionally argues that Plaintiff

cannot maintain her action for breach of contract because no valid

contract existed between Grosso and Defendant.

A. Res Judicata

The doctrine of res judicata prevents a party from

relitigating issues in a subsequent litigation that were or could

have been brought in a prior action. Allen v. McCurry, 449 U.S.

90, 94, 101 S. Ct. 411, 66 L . Ed. 2d 308 (1980). "When a court of

competent jurisdiction has entered a final judgment on the merits

of a cause of action, the parties to the suit and their privies are

thereafter bound 'not only as to every matter which was offered and

received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" Tarka v. Time, Inc. Magazine Co., No. 90-CV-5348, 1991 U.S. Dist. LEXIS 343, at *13 (S.D.N.Y. Jan. 10, 1991) (quoting Commissioner v. Sunnen, 333 U.S. 591, 597, 68 S. Ct. 715, 92 L. Ed. 898 (1948)).

The doctrine of res judicata applies if "(1) there is a previous adjudication on the merits; (2) the previous action involved [defendant] or its privy; and (3) the claims involved were or could have been raised in the previous action." Whelton v. Educ. Credit Mgmt. Corp., 432 F.3d 150, 155 (2d Cir. 2005) (citing Monahan v. N. Y. City Dep't of Corr., 214 F.3d 275, 284-85 (2d Cir. 2000)).

Although the pending Complaint is very similar to the State Court Action, res judicata is inapplicable because there was no final judgment in the State Court Action against Defendant in her personal capacity. Justice Winslow dismissed the claims against Defendant in her individual capacity because Plaintiffs failed to establish personal jurisdiction over Defendant. "[A] dismissal for lack of personal jurisdiction is not a final judgment on the merits." Barrett v. Tema Dev. (1988), Inc., 463 F. Supp. 2d 423, 427 (S.D.N.Y. 2006). Accordingly, Plaintiffs' current Complaint, which names Defendant solely in her individual capacity,

is not barred by res judicata.[2]

B.   Collateral Estoppel

The doctrine of collateral estoppel applies when "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was 'actually litigated and actually decided,' (3) there was 'a full and fair opportunity for litigation in the prior proceeding,' and (4) the issues previously litigated were 'necessary to support a valid and final judgment on the merits.'" Ali v. Mukasey, 529 F.3d 478, 489 (2d Cir. 2008) (quoting Gelb v. Royal Globe Ins. Co., 798 F.2d 38, 44 (2d Cir. 1986)).

---

[2] Although Defendant moved to dismiss for lack of personal jurisdiction in the state court, Defendant, a domiciliary of New Jersey, did not move to dismiss the federal action on this basis. Rather, it appears that both parties confuse the concepts of personal jurisdiction with subject-matter jurisdiction, and erroneously believe that this Court has personal jurisdiction over Defendant in this action because of diversity of citizenship. "Subject-matter jurisdiction and personal jurisdiction are distinct concepts, however, with the former 'concerned with the kinds of cases the federal district courts are empowered to decide' and the latter 'concerned with the relationship of a given defendant to the particular geographic area in which a case is brought.'" Phillips v. St. George's Univ., No. 07-CV-1555, 2007 U.S. Dist. LEXIS 84674, at *9 (E.D.N.Y. Nov. 15, 2007) (quoting United States, ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd., 110 F.3d 861, 864 (2d Cir. 1997). The parties' diversity and the amount in controversy in this case supports subject matter jurisdiction, but has no bearing on whether the United States District Court for the Eastern District of New York can exercise personal jurisdiction over a New Jersey domiciliary. Nonetheless, Defendant waived any personal jurisdiction argument by appearing in this action and failing to raise lack of personal jurisdiction.

Defendant argues that collateral estoppel bars Plaintiffs' claims in this case. Inexplicably, Defendant does not explain which claims or arguments are barred by collateral estoppel, and does not cite to any cases in support of this argument.[3]

The Court finds that Plaintiffs' sixth and eighth causes of action for breach of fiduciary duty are barred by collateral estoppel. Plaintiffs' sixth cause of action in her federal Complaint alleges that Defendant, in her personal capacity, breached a fiduciary duty owed to Adam by allegedly failing to roll over $81,377.01 of the Decedent's Tax Deferred Annuity Account ("TDA") into Adam's UGMA account.[4] The eighth cause of action is

_____

[3] The Court notes that Plaintiffs and Defendant's briefs are inadequate and significantly lacking legal arguments. While Defendant barely cites to any cases, and declines to support her legal arguments with facts, Plaintiffs' papers are almost entirely void of legal arguments. Plaintiffs primarily support their legal arguments with citations to statements in their Affidavits or exhibits attached to the Complaint, rather than actual case law. Plaintiffs are advised that their own statements are not support for legal conclusions. Stripped of the many aspersions and insults directed at opposing counsel, the papers submitted on behalf of Plaintiffs consist of, at best, one page of actual legal argument. Defendant's papers are no more impressive. Rather than further supporting the arguments made in her motion for summary judgment, Defendant's reply brief consists of nothing more than an Affidavit responding to the many disparaging comments made by Plaintiffs, and absolutely no case law. Frankly, the Court finds the papers submitted thus far to be insulting.

[4] Although Plaintiffs' Seventh Cause of Action is also based on the TDA account, this claim differs somewhat in that Plaintiffs allege that Defendant breached her fiduciary duty by failing to submit the Will to probate and by failing to seek guidance as to

essentially identical to the sixth, and seeks a "surcharge" and interest on $81,377.01 allegedly owed to Adam.

The third cause of action in Plaintiffs' State Court Complaint alleged that Defendant, in her capacity as custodian of the UGMA account, breached a fiduciary duty owed to Spencer by failing to roll over the funds in the Decedent's TDA account. Although there are minor differences in the wording of the claim in federal court, and that filed in the State Court Action, the issues in both claims are essentially identical. The fact that Defendant is now sued in her "personal capacity" on behalf of Adam, as opposed to her capacity as custodian of the UGMA account on behalf of Spencer, does not salvage Plaintiffs' claim. The issue is the same; whether Defendant failed to uphold her duties to the children as the custodian of their UGMA account by failing to roll over the TDA funds. It cannot be held that Defendant, in her personal capacity, breached her fiduciary duty to Adam in federal court, while Defendant, in her capacity as custodian, did not breach her fiduciary duty to Spencer in state court for the exact same action, i.e., failure to roll over funds in the Decedent's TDA account into the children's UGMA account.

─────────────────────

the proper distribution of the funds in Decedent's TDA account. The Seventh Cause of Action does not allege that Defendant breached her fiduciary duty by failing to roll over the funds, and therefore this action is not barred by collateral estoppel. The Court makes no finding as to the validity of Plaintiffs' claim.

In the State Court Action, Justice Winslow dismissed Plaintiffs' breach of fiduciary duty claim because Plaintiffs had not shown how Defendant "failed to conform to the applicable standard of care in the management of the UGMA assets and a proximate causal relation between the defendant's deviation from the applicable standard of care and the loss suffered by plaintiff." Plaintiffs attempt to circumvent Justice Winslow's ruling by rearguing a nearly-identical fiduciary duty claim, albeit this time against Defendant in her "personal capacity" and on behalf of Adam, rather than Spencer.

In order to establish that Defendant, in her "personal capacity," breached a fiduciary duty to Adam, Plaintiffs would first have to establish that Defendant had a fiduciary duty to Adam. Plaintiffs' allegations of a fiduciary duty are necessarily based upon Defendant's role as custodian of Adam's UGMA account, and Plaintiff's duties to Adam as custodian of Adam's UGMA account are the same as her duties to Spencer as custodian of Spencer's UGMA account. The issue of whether Defendant, in her personal capacity, breached a fiduciary duty to Adam by failing to roll over the TDA funds is identical to whether Defendant, in her capacity as custodian of the UGMA account, breached a fiduciary duty to Spencer. This issue has already been decided in the previous action, where, after a full and fair opportunity for litigation, Justice Winslow found that Plaintiff failed to state a cause of

action for breach of fiduciary duty based upon Defendant's alleged failure to roll over the TDA funds.  Thus, Plaintiffs' rehashed breach of fiduciary duty against Defendant based upon Defendant's failure to roll over the TDA funds is barred by collateral estoppel.

The Court therefore GRANTS summary judgment to Defendant on Plaintiffs' sixth through eighth causes of action.  None of Plaintiffs' remaining claims are barred by collateral estoppel because there was no final judgment on the merits in the State Court Action on any of Plaintiffs' remaining claims.  <u>See</u> <u>Four Star Capital Corp. v. Nynex Corp.</u>, No. 93-CV-3706, 1993 U.S. Dist. LEXIS 12451, at *6 (S.D.N.Y. Sept. 8, 1993) (finding that collateral estoppel should not be applied because the former decision "that personal jurisdiction was lacking [did] not constitute a valid and final judgment on the merits.") (internal quotations omitted).

C.    <u>The Probate Exception</u>

The "'probate exception' is an historical aspect of federal jurisdiction that holds 'probate matters' are excepted from the scope of federal diversity jurisdiction." <u>Lefkowitz v. Bank of N.Y.</u>, 528 F.3d 102, 105 (2d Cir. N.Y. 2007) (<u>citing</u> <u>Marshall v. Marshall</u>, 547 U.S. 293, 126 S. Ct. 1735, 1746, 164 L. Ed. 2d 480 (2006)).  The Supreme Court recently clarified that the exception is limited in scope, and only applies to reserve "to state probate courts the probate or annulment of a will and the administration of

a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." <u>Marshall</u>, 547 U.S. at  312.

<u>Marshal</u> reversed the Ninth Circuit Court of Appeal's holding that it did not have jurisdiction over a petitioner's tortious interference claim. The petitioner alleged that her step-son tortiously interfered with a gift that the petitioner's late husband intended to make prior to his death. Petitioner's step-son argued that the tortious interference claim could only be heard in the ongoing probate court proceedings. The Supreme Court explained that probate exception did not apply to the petitioner's tortious interference claim because the petitioner merely sought "an <u>in personam</u> judgment against [the Defendant]", her claim did not "involve the administration of an estate, the probate of a will, or any other purely probate matter" and the petitioner did not "seek to reach a <u>res</u> in the custody of a state court." <u>Marshall</u>, 547 U.S. at 312 (internal citations and quotations omitted).

Defendant argues that the probate exception bars Plaintiffs' claims. The Court finds that Plaintiffs' causes of action for breach of fiduciary duty and breach of contract are not barred by the probate exception. These claims seek damages from Defendant individually for alleged wrongs that are separate from

and do not involve the administration of estate assets.  See
Lefkowitz v. Bank of N.Y., 528 F.3d 102, 108 (2d Cir. N.Y. 2007)
("The probate exception can no longer be used to dismiss 'widely
recognized tort[s]' such as breach of fiduciary duty or fraudulent
misrepresentation merely because the issues intertwine with claims
proceeding in state court.") (quoting Marshall, 126 S. Ct. at
1748).

    D. Plaintiffs' Breach of Contract Claim Fails

        Plaintiffs' first cause of action alleges that Defendant
breached a contract by failing to pay Grosso the $80,000.00 owed to
Grosso by the Decedent.  Plaintiff argues that Defendant Radice
acknowledged the Decedent's personal obligation to obtain an
$80,000.00 life insurance policy for the benefit of the three
children, and personally agreed to pay the Decedent's debt.  As
support for this claim, Plaintiff cites to Defendant's May 2003
letter to Grosso, wherein Defendant encloses a check for $341.84
and states, "[t]his check is an advance on the $80,000 to which we
have agreed you are entitled to receive from my father's estate."
Grosso maintains that the letter memorializes Defendant's agreement
to pay her father's debt personally in consideration for Grosso's
promise to refrain from suing Defendant for the $80,000.00.

        Both Plaintiffs and Defendant move for summary judgment
on the breach of contract claim.  Defendant argues that she is
entitled to summary judgment because she did not enter into an

agreement to assume financial responsibility for the Decedent's debt. Defendant argues that her May 2003 letter merely acknowledged her father's debt and indicated that Grosso was entitled to receive the $80,000.00 from the Decedent's estate; the letter did not constitute a promise by Defendant to assume the debt personally.

"To sustain a claim for breach of contract under New York law, a plaintiff must demonstrate: 1) the existence of an agreement, 2) adequate performance of the contract by the plaintiff, 3) breach of contract by the defendants, and 4) damages. Diversified Carting, Inc. v. City of New York, No. 04-CV-9507, 2006 U.S. Dist. LEXIS 1701, at *17 (S.D.N.Y. Jan. 20, 2006) (internal quotations omitted).

Plaintiffs' breach of contract claim fails because Plaintiffs have not proven the fundamental tenet of a breach of contract claim: the existence of an agreement. The Court has reviewed Plaintiffs' arguments, the May 2003 letter, and Plaintiffs' remaining exhibits, and has not found any support for Plaintiffs' claim that Defendant agreed to assume her father's debt. It is clear to the Court that Defendant's letter only acknowledges that the Decedent had a personal debt to Grosso; there is absolutely no promise made by Defendant to pay this debt from her personal funds. To the extent that Plaintiffs construed the letter as an offer to assume such debt, this clearly was not

Defendant's intent, and as such, the agreement fails for lack of mutual assent. "Interwoven in the analysis of the offer and the acceptance is the requirement of mutual assent, which considers whether there has been a meeting of the minds between the parties on all essential terms of the agreement." Ostman v. St. John's Episcopal Hosp., 918 F. Supp. 635, 643 (E.D.N.Y. 1996).

In addition to the lack of an agreement, Plaintiffs have also failed to show the existence of consideration. It is textbook law that consideration is required for an agreement to be valid. See I. & I. Holding Corp. v. Gainsburg, 276 N.Y. 427, 433, 12 N.E.2d 532, 534 (1934) ("[U]nder our law, there must be consideration in contracts in order to make them valid.). Grosso argues that in consideration for the alleged contract, Grosso promised not to file suit against Radice. While it is true that "forbearance to assert a colorable legal claim constitutes sufficient consideration to support a contract," Sharon Steel Corp. v. Chase Manhattan Bank, N.A., 521 F. Supp. 104, 111 (S.D.N.Y. 1981), aff'd 691 F.2d 1039 (2d Cir. 1982), Grosso has failed to show that she promised to forebear from filing suit for a definite time, or that Defendant accepted this consideration.

The Court finds that the parties did not have an agreement wherein Defendant would personally assume her father's debt, and therefore DENIES Plaintiffs' motion for partial summary judgment and GRANTS summary judgment to Defendant on this claim.

E.    Plaintiffs' Breach of Fiduciary Duty Claims Seeking
      Monetary Relief are Barred by the Statute of Limitations

     In her motion for summary judgment, Defendant argues that
a three-year statute of limitations bars Plaintiffs' breach of
fiduciary duty claims.   In response, Plaintiffs argue that a six-
year statute of limitations applies to her claims, and thus her
claims are not barred.   Inexplicably, Defendant does not respond to
this argument whatsoever in her reply papers.

     "[M]onetary claims for a breach of fiduciary duty under
New York law [are] governed by the three year statute of
limitations set forth in CPLR 214(4)."   Sferra v. Mathew, 103 F.
Supp. 2d 617, 620 (E.D.N.Y. 2000) (citing The Independent Order of
Foresters v. Donald, Lufkin & Jenrette, Inc., 157 F.3d 933, 942 (2d
Cir. 1998)).   The statute of limitations begins to run when a
plaintiff knew or should have known of the facts underlying the
breach of fiduciary duty claim.

     Plaintiffs state in their opposing papers that they knew
the facts underlying the breach of fiduciary duty claims on June 6,
2003, when Defendant "evinced her repudiation of her administration
of her father's estate" by stating that there were no assets
remaining in the estate and no basis for probating the Will.
(Pls.' Opp. 20-21.)   However, Plaintiffs maintain that the breach
of fiduciary duty claims are not time-barred because a six-year
statute of limitations applies to all of her fiduciary duty claims.
Plaintiffs cite to absolutely no binding cases to support this

argument; rather, Plaintiffs appear content with citing a New York
Law Journal article purportedly discussing a state court case.[5] As
already noted, "under New York law, a claim for breach of fiduciary
duty would be governed by a three-year limitations period if the
action sought monetary relief but by a six-year period if the
action sought equitable relief." Cooper v. Parsky, 140 F.3d 433,
441 (2d Cir. 1998).

        Thus, Plaintiffs' second, fourth, fifth, sixth, eighth,
ninth, eleventh, thirteenth, and fifteenth causes of action, which
seek monetary damages for Defendant's alleged breach of fiduciary
duty, are barred by the statute of limitations.[6] By her own

---

[5] It appears that Plaintiffs invoke the six-year "Statute of
Limitations applicable to a claim to compel a legal
representative to account and to pay a legacy . . . ." In re
Estate of Seaman, 146 Misc. 2d 563, 565 (N.Y. Sur. Ct. 1990).
However, Plaintiffs' claims are not against Defendant as a legal
representative of the estate. The estate was never admitted to
probate, and Defendant was not appointed Executrix. Plaintiffs'
claims are against Defendant in her personal capacity as a
fiduciary of Adam, Melissa, and Spencer. Thus, the three-year
statute of limitations for breach of fiduciary duty claims
seeking monetary relief is applicable to Plaintiffs' claims.

[6] Plaintiffs' second cause of action seeks damages against
Defendant in an amount of $350,000 for Defendant's alleged
misconduct with respect to the Decedent's IRA account.
Plaintiffs' fourth cause of action is not a separate claim;
rather, Plaintiff re-asserts her second cause of action and asks
for interest on the funds in the IRA account from the date of the
Decedent's death. Likewise, Plaintiffs' Fifth Cause of Action is
again related to the alleged breach of fiduciary duty involving
the IRA account. However, the Fifth Cause of action seeks
damages to compensate Grosso for the home equity line of credit
Grosso allegedly borrowed to cover the costs of her children's
health and welfare. Plaintiffs' sixth cause of action for breach
of fiduciary duty, which the Court has found is also barred by

18

admission, Grosso knew the facts underlying her breach of fiduciary duty claims on June 6, 2003. Accordingly, Plaintiffs should have brought the breach of fiduciary claims seeking monetary relief by June 6, 2006.

Plaintiffs' third, seventh, tenth, and twelfth causes of action, which seek an accounting and not damages, are not barred by the statute of limitations. "Equity actions for an accounting based on a breach of fiduciary duty . . . are governed by a six-year limitations period." Loengard v. Santa Fe Industries, Inc., 573 F. Supp. 1355, 1360 (S.D.N.Y. 1983). See also Estate of Albin v. Mertz, 2006 U.S. Dist. LEXIS 15710 (S.D.N.Y. Mar. 15,

---

collateral estoppel, again seeks damages from Defendant to reimburse Grosso for her home equity line of credit. Grosso maintains that she would not have had to incur this debt if Defendant had rolled over the funds in the Decedent's TDA account to Adam's UGMA account. The eighth cause of action seeks interest on the funds allegedly owed to Adam from the Decedent's TDA account. Plaintiffs' ninth cause of action seeks reimbursement for the home equity line of credit for Defendant's failure to probate the Will. The eleventh cause of action states that Defendant breached a fiduciary duty to the children by depositing funds available in the Decedent's estate into Defendant's personal account. Plaintiffs, without any supporting evidence, maintain that there was, in fact, funds remaining in the estate that should have passed to Adam, Melissa, and Spencer as creditors of the estate. Plaintiffs again seek reimbursement for the home equity line of credit as damages for the eleventh cause of action. The thirteenth cause of action seeks damages against Defendant, in an amount of $350,000.00, for Defendant's payment of her legal fees from monies available to the creditors of the estate. Besides being barred by the statute of limitations, this claim is preposterous, and is completely unsupported. Finally, Plaintiffs' fifteenth cause of action seeks $352,898.92, which represents the monies Defendant allegedly wrongfully personally distributed to herself.

2006) ("When only legal damages are sought, the statute of limitations is three years; where the relief sought is equitable in nature, the limitation period is six years."). Likewise, Plaintiffs' fourteenth cause of action, which seeks to enjoin Defendant from paying her legal fees from monies allegedly earmarked for the children, is governed by the six-year statute of limitations, and is not barred.

    F.    <u>Plaintiffs' Remaining Causes of Action are Not Barred by the Domestic Relations Exception or the Rooker-Feldman Doctrine</u>

Plaintiffs' remaining causes of action seek an accounting for Defendant's alleged breach of fiduciary duty. Although Defendant maintains that these actions are barred by the domestic relations exception, the Court disagrees. Under the domestic relations exception, "divorce, alimony, and child custody decrees" remain outside federal jurisdictional bounds. <u>Marshall v. Marshall</u>, 547 U.S. 293, 308, 126 S. Ct. 1735, 1746, 164 L. Ed. 2d 480, 495 (2006). This exception is based upon a "policy consideration that the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which the federal courts lack." <u>Thomas v. New York City</u>, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993).

Plaintiffs' claims against Defendant do not arise from a divorce, alimony, or child-custody decree. Although the claims are

intertwined with obligations Decedent had to Grosso based upon a settlement of divorce, the claims against Defendant arise from Defendant's alleged role as a fiduciary, and are not based upon the settlement of divorce. The domestic relations exception does not bar Plaintiffs' claims.

The Rooker-Feldman doctrine is also inapplicable. Coalescing the Supreme Court's holdings in <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983) and <u>Rooker v. Fidelity Trust Co.</u> 263 U.S. 413, 414-17, 44 S. Ct. 149, 150, 68 L. Ed. 362 (1923), the <u>Rooker-Feldman</u> doctrine prohibits federal district courts from considering collateral attacks to state court judgments.

There are four requirements for the application of the <u>Rooker-Feldman</u> doctrine: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff's injuries must be caused by the state court judgment; (3) the plaintiff's claims must invite the district court to review and reject the state court judgment; and (4) the state-court judgment must have been rendered prior to the commencement of the district court proceedings. <u>See</u> <u>Hoblock v. Albany County Bd. of Elections</u>, 422 F.3d 77, 85 (2d Cir. 2005).

Here, although Plaintiffs were the state-court losers, Plaintiffs' injuries are not caused by the judgment in the State Court Action, nor are Plaintiffs asking the Court to review the State Court judgment. Thus, Plaintiffs' claims are not barred by

the Rooker-Feldman doctrine.

G.   <u>Accord and Satisfaction</u>

Defendant argues that Plaintiffs' Complaint is barred by accord and satisfaction based upon a release Plaintiffs signed. Plaintiffs argue that the release was inapplicable to the claims in this case.   The Court rejects Defendant's argument without prejudice because there is no mention of a signed release in the parties' 56.1 Statements.   The Court will not address arguments involving underlying facts that have not been addressed whatsoever in the parties' 56.1 Statements.   Clearly, if the release is not referred to in the parties' 56.1 Statements, there are unresolved issues of fact with respect to the validity and breadth of the alleged release.

III. <u>Plaintiffs' Motion for a Stay and Numerous Motions for Sanctions</u>

On October 10, 2008, Plaintiffs filed a motion seeking an Order "refusing to recognize, and enjoining the enforcement of" the State Court Action pursuant to Federal Rule of Civil Procedure 60(b), finding that Radice has committed perjury and criminal conspiracy, imposing various sanctions against Radice, and granting Plaintiffs' permission to amend the Complaint.   Plaintiffs allege that they recently discovered that Radice acted in conspiracy with Emily Klotz, Esq., Defendant's counsel in the State Court Action, to defraud the state court and deprive Plaintiffs of a fair trial. According to Plaintiffs, Defendant filed a probate proceeding in

Surrogate's Court, and then withdrew the proceeding based upon a lack of assets in the Decedent's Estate. Plaintiffs maintain that this somehow evidences a fraud on this Court and contradicts Radice's position that she never sought to probate the estate. Plaintiffs' motion is completely frivolous and is DENIED in its entirely. Plaintiffs have not provided the Court with any basis to allow amendment of the Complaint at this late stage, nor have Plaintiffs convinced the Court to impose sanctions against Radice or hold Radice in contempt. Further, Plaintiffs are advised that Federal Rule of Civil Procedure 60(b) cannot be invoked to ask a federal district court to reconsider an order issued by a state court.

Finally, the Court declines to grants Plaintiffs' numerous requests for sanctions. Rule 11(c) permits a district court to impose sanctions on the attorneys, law firms, or parties who have violated Rule 11(b) of the Federal Rules of Civil Procedure. It is well established that "[t]he decision whether to impose a sanction for a Rule 11(b) violation is . . . committed to the district court's discretion." Perez v. Posse Comitatus, 373 F.3d 321, 325 (2d Cir. 2004). Even where the Court determines the existence of a Rule 11(b) violation, a district court is not required to impose sanctions. See id. Plaintiffs' request for sanctions is baseless.

IV.  Future Filings

Plaintiffs' third, seventh, tenth, twelfth, and fourteenth causes of action are remaining in this action.  The Court does not suggest that Plaintiffs' remaining claims are viable; however, the Court cannot grant summary judgment based upon the submissions thus far.

It appears to the Court that the parties preliminarily filed their motions for summary judgment prior to engaging in discovery, and thus the parties may not have had an opportunity to obtain sufficient evidence in support of their claims.  Thus, the Court will permit the parties to re-move for permission to file summary judgment motions on the remaining claims after the close of discovery.

The Court notes that the parties current filings were largely defective.  Both parties made legal arguments in their 56.1 Statements, and failed to limit their statements to purely uncontested factual statements.  The parties also cited to facts in the memoranda that were not addressed in their 56.1 Statements. Additionally, both parties submitted lengthy and largely repetitive papers lacking in legal argument and case law, and often failed to respond to the arguments made by opposing counsel.  Consequently, the Court was left with the difficult task of deciphering the arguments, and limiting its discussion to only those arguments that are based upon facts addressed in the 56.1 Statements.  The parties

are warned that future defective filings may be rejected by the Court.

CONCLUSION

For the reasons stated above, the Court DENIES Plaintiffs' motions for sanctions (Docket Entry Nos. 29 and 30), DENIES in part and GRANTS in part Defendant's motion for summary judgment (Docket Entry No. 36), DENIES Plaintiffs' motion for partial summary judgment (Docket Entry No. 37), and DENIES Plaintiffs' motion to stay, motion to amend, and motion for contempt (Docket Entry No. 54). The Clerk of the Court is directed to terminate Plaintiffs' letter motion to file a sur-reply, as it is mooted by Plaintiffs' letter motion to withdraw her application to file a sur-reply (Docket Entry No. 54). Plaintiffs' letter motion to withdraw her application is GRANTED.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    Central Islip, New York
          March  16 , 2009

25